## Cephas Waterman *versus* Richard F. Johnson.

Where in the conveyance of land a description is given, which has not acquired a fixed legal construction, or a boundary is referred to, which is variable, parol evidence is admissible in order to ascertain the meaning and construction of the deed.

Thus, where the deed described the land as bounded on a certain pond, and upon applying the deed to the local objects embraced within its descriptive terms, it appeared that the pond was a natural pond which was raised more or less at different times by means of a dam existing and in use at the time of the conveyance, so that there was a latent ambiguity, it was held competent to a party to prove by parol evidence, that a certain line was agreed on and understood at the time of the conveyance as the boundary of the pond.

Complaint for flowing the complainant's land from July 1828 to July 1830. The respondents pleaded that they did not flow the complainant's land.

On the trial, before *Putnam* J., the complainant claimed title to the land alleged to have been flowed, under a deed from Charles Holmes, one of the respondents, dated February 22, 1822, Holmes being then and ever since an owner and occupant of the dam and mills mentioned in the complaint. The land conveyed was a farm, the bounds of which are described in the deed as beginning at " Jones River pond," and, after several courses, running " to the forge pond, thence up stream by said pond to the canal that leads from Jones River pond, thence by said canal to Jones River pond, thence by said pond to the first mentioned bound."

It was in evidence, that Jones River pond was a natural pond, but that ever since the memory of man it had at times been flowed beyond its natural dimensions by means of the dam owned by the respondents ; and the respondents offered evidence tending to show, that before the execution of the deed from Holmes, he and the other owners of the dam and mills had erected a dam of permanent materials, adapted in its ordinary use to extend the borders of Jones River pond to a certain point, and that they had, before the time of the deed, actually thrown the water back to the point, and that since the execution of the deed their dam had never been heightened or extended, so as to give it power to flow any higher than it would and had flowed before ; and that in fact the respondents never had flowed any higher than they had done some time during the year preceding the date of the deed.

Upon this evidence the respondents requested the judge to instruct the jury, that the boundary of the complainant's land under the deed, must be considered to be the high-water mark of the pond as the same would be and had been expanded by means of the respondents' dam and flowing as above mentioned.

The complainant's counsel then stated, that Jones River pond is a large natural pond of several miles in circumference ; that on the side of the farm there was a natural bank and barrier of the pond, which, at the time of making the deed, was not overflowed, and which the natural pond never overflowed, and which was intended and agreed upon by the

parties, at the time of making the deed, as the marginal line of Jones River pond, by which the farm should then be bounded ; and the counsel moved that he might be permitted to go into evidence of these facts, and he was permitted accordingly.

But the judge instructed the jury, that although such high-water mark would *primâ facie* be considered as the exterior bounds of the complainant's land under the deed, still the jury might be permitted to judge and determine what the parties to the deed intended by the boundary of " Jones River pond," and if from the evidence offered, taking into consideration the declarations of the grantor made to the grantee, upon the premises, while in treaty for the purchase of the farm, the previous ʿgeneral occupation of the premises for years before, and the natural indications of boundary existing around the pond at the time of the deed, and the conduct of the parties subsequently to the deed, they were satisfied that the parties intended some other point than high-water mark, viz. low-water mark or any intermediate point, and that the respondents had, during the time mentioned in the complaint, flowed beyond such low-water mark or such intermediate point so by them found as the intended boundary, they would return a verdict of guilty against the respondents.

The jury returned a verdict finding that the complainant's " line as intended by his deed, is the centre of the hedge row, so called," which verdict was reduced to form in court, is a verdict against the respondents, and was so affirmed by the jury.

The respondents filed exceptions ; 1. Because the judge permitted parol evidence to be offered, to control the legal operation of a deed ; 2. Because, on the admission of the parol evidence to ascertain the bounds of Jones River pond, there was no dispute or uncertainty as to the point of high-water mark, and yet the judge permitted and instructed the jury to determine, on the whole matter, whether the parties to the deed did or did not intend a boundary other and different from the *primâ facie* legal operation of the deed.

*Beal* and *Warren*, in support of the exceptions, cited to the point that the parol evidence was inadmissible, *Doe* v. *Burt*, 1 T. R. 701 ; *Jackson* v. *Ogden*, 7 Johns. R. 238 ; *Jackson* v. *Murray*, ibid. 7 ; *Choate* v. *Burnham*, 7 Pick. 274 ; *Gilbert* v. *Bulkley*, 5 Connect. R. 262 ; *Wade* v. *Howard*, 6 Pick. 492 ; *Comstock* v. *Van Deusen*, 5 Pick. 163 ; *Thomas* v. *Thomas*, 6 T. R. 671 ; *Richards* v. *Killam*, 10 Mass. R. 245 ; *Dwight* v. *Pomeroy*, 17 Mass. R. 303 ; *Jackson* v. *Sill*, 11 Johns. R. 201 ; 3 Stark. Evid. 1012 ; *Pitkin* v. *Brainerd*, 5 Connect. R. 451 ; *Lano* v. *Neale*, 2 Stark. R. 105 ; *Iggulden* v. *May*, 5 Bos. & Pul. 449 ; *Meres* v. *Ansell*, 3 Wils. 275 ; *Clifton* v. *Walmesley*, 5 T. R. 564 ; Peake's Ev. 116.

*W. Baylies* and *Eddy*, for the complainant, referred to *Davenport* v. *Mason*, 15 Mass. R. 90, cites 1 Doug. 31 ; 3 Stark. Ev. 1040 ; 5 Wendell, 423 ; Anc. Chart. 148 ; 3 Kent's Com. 344, 345 ; Vattel, *bk*. 1, *c*. 22 ; *Handly's Lessee* v. *Anthony*, 5 Wheat. 375.

Shaw C. J. delivered the opinion of the Court. The question in this case is one of soil and freehold exclusively and not of easement or right to flow. It is a question o boundary, depending on the construction of the deed, and is to be determined in the same manner as if the grant had been made by a stranger and not by an owner of the mills.

The rule is clear, that where the parties make any definite agreement in their deed, such agreement will control any legal implication. But where general terms are used in a description, the court will put a construction upon those terms, where any definite rule has been established, and in such case parol evidence will not be admissible to control the legal effect of such description, any more than to control the plain meaning or legal effect of any clause or stipulation contained in a deed.

As where the deed bounds the premises upon the sea or salt water, the legal effect is to give a title to the soil, subject to certain limitations, to low-water mark, such being the legal construction put upon this description by the colony ordinance and by usage.

So if the premises conveyed are bounded on a river not navigable, the grant extends, by legal operation, to the *filum aquæ* or thread of the river.

Though in both these cases the parties, if they think fit, may limit their grants by definite language, so as to give them a different operation, and thus exclude the flats or the bed of the river in the above cases respectively.

But where a description is employed, which has not by statute, usage, or judicial decision, acquired a fixed legal construction, or a boundary is referred to which is fluctuating and variable, other means must be resorted to in order to ascertain the meaning and construction of the deed.

Now the word " pond " is indefinite. It may mean a natural pond, or an artificial pond raised for mill purposes, either permanent or temporary, and in both cases the limits of such body of water may vary at different times and seasons, by use, or by natural causes, and where the one or the other is adopted as a descriptive limit or boundary, a different rule of construction may apply.

A large natural pond may have a definite low-water line, and then it would seem to be the most natural construction, and one which would be most likely to carry into effect the intent of the parties, to hold, that land bounded upon such a pond would extend to low-water line, it being presumed that it is intended to give to the grantee the benefit of the water, whatever it may be, which he could not have upon any other construction.

Where an artificial pond is raised by a dam, swelling a stream over its banks, it would be natural to presume, that a grant of land bounding upon such a pond, would extend to the thread of the stream upon which it is raised, unless the pond had been so long kept up as to become permanent, and to have acquired another well-defined boundary.

But it is difficult to apply either of these rules to the present case, which is that of a pond originally natural, but which has been raised more or less by artificial means. The discovery of this fact, upon applying the deed to the local objects embraced within its descriptive terms, discloses a latent ambiguity. According to a well established rule of

Waterman
*v.*
Johnson.

evidence, therefore, it is competent to resort to parol proof, showing all the circumstances, from which a legal inference can be drawn, that one or another line was intended by the ambiguous description used in the deed. And this is, in truth, what both parties have done in the present case.

The respondents have shown by evidence *aliunde*, that Holmes the grantor, was one of the owners of certain mills standing on the dam at the outlet of Jones River pond ; that such dam had been built, of permanent materials, to a height sufficient, when the pond is full, to raise the limit of the pond to a certain line ; that at some times before the deed was given, the limit had been so raised ; and thereupon they contend, that the *pond* referred to in the descriptive part of the deed, ought to be held to extend to the line to which it could be, and had at some time in fact been raised by such dam. These were facts, proved by parol evidence, facts existing at the time of the conveyance and prior thereto, to induce the jury to believe that a particular line was intended ; which proof would have been inadmissible, had the description in the deed been clear and unambiguous.

But the Court are of opinion, that the legal consequence contended for by the respondents, does not follow from these facts, and that in point of law the jury ought not to have been instructed in the manner prayed for. So far as the evidence could be available at all, in its effect upon the general question, what was the limit or boundary, intended by the parties, in the language used in their deed, it was for the consideration of the jury, and the respondents had the benefit of it.

Upon the question of the competency of the parol evidence offered by the complainant, the Court have entertained some doubt, arising from the terms in which it is reported in the bill of exceptions. It is stated, that the complainant offered evidence of the existence of a certain natural bank or barrier, which the natural pond never overflowed, and which was intended and agreed upon by the parties, at the time of making the deed, as the marginal line of Jones River pond, by which the farm to be conveyed should be bounded. If the description in the deed, in its natural construction or

legal effect, was to fix the limit at any particular line, as, for instance, low-water mark or high-water mark, no parol agreement of the parties could restrain the operation of the deed and fix other limits, and no evidence tending to prove such agreement would be admissible. But considering the description in its application to the subject matter, that is, a pond neither wholly natural nor wholly artificial, and that there is no settled rule of legal construction, which fixes the line of such a pond, and so there is a latent ambiguity, we think it was competent for the complainant to show, that the parties, at the time of the conveyance, intended and agreed that a certain natural bank or barrier, which answers the descriptive words of the deed, as well at least as any other, was the monument or marginal line which they understood as the boundary of Jones River pond. It is a well-settled rule in the construction of deeds, that where certain monuments are referred to in a description, which do not exist at the time, and afterwards the parties, in good faith and by mutual agreement, put up monuments as and for those intended in the description, such monuments will be deemed the monuments intended in the description. Yet this placing of monuments and the consent and agreement of the parties in relation thereto, must be proved by parol. If it is competent to show by parol evidence, that certain monuments have been erected and fixed, at or about, or soon after the time of the execution of a deed, as and for the monuments meant and intended in the descriptive parts of a deed, *à fortiori* is it admissible to adduce similar proof, to show that certain monuments actually existing at the time, were the monuments intended, where there are two or more which equally well answer the description. Suppose the deed describes a line as running to a pine tree marked, and in applying the deed to the land, there are found two pine trees marked, either of which answers the general description, and no course, distance, or other particular in the deed, to determine which is intended, parol evidence would be admissible to show which was intended.

If the evidence offered by the complainant was competent to show the monuments and fix the marginal line, then it is

manifest that the deed establishes the consequence, that such is the line by which the farm conveyed is bounded. It could not in such case be said with any propriety, that any estate passes by force of the parol agreement, or that the estate is enlarged or diminished by force of that agreement. The parol evidence identifies the subject on which the deed operates, and then the estate passes by force of the deed. Suppose A B grants in these words, " all the estate now in my occupation in —— street." The very first step is to prove by parol where that house, occupied by the grantor, was situated. But then another question arises ; the grantee contends, that the grantor occupied a dwellinghouse, and a stable adjoining, and the grantor denies it. This question must be determined wholly by parol evidence ; but as it is so determined, the house alone, or the house and stable, will be adjudged to have passed by the deed.

It does not appear in this case, whether the bank or barrier before mentioned was at high-water mark or low-water mark of the natural pond, or whether the character of the shore of the pond, at the place in question, was such as to make much difference in these two lines. But the complainant did not claim a line more favorable to himself than that of the barrier ; and we can perceive no ground in point of law, or on the evidence which appears in the case, upon which the respondents can maintain that the grant from Holmes does not extend as far as the barrier, in the direction of the pond.

We think that under the very peculiar circumstances of the case, the parol evidence was rightly admitted, and that it was properly left to the jury, to find from all the evidence, what line the parties intended in their deed as the line of Jones River pond, and that there is no legal ground for setting aside the verdict.

*Judgment according to verdict.*